

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

February 5, 1962

Honorable R. L. Lattimore          Opinion No. WW-1252
Criminal District Attorney
Hidalgo County                     Re:  Taxability of international
Edinburg, Texas                         bridge and adjacent build-
                                        ings owned by city outside
Dear Mr. Lattimore:                     its city limits.

    You have asked for an opinion on whether or not the
international bridge and adjacent buildings owned by the
City of McAllen are subject to ad valorem taxes levied by
the Hidalgo Independent School District. You state that the
bridge is not located within the limits of the City of McAllen,
Texas, but is situated about 8 or 10 miles South of the city
limits. The bridge and the adjacent buildings were purchased
by the City of McAllen in April, 1960, from a private corpora-
tion. The City of McAllen issued revenue bonds to obtain
money to finance the purchase. The bridge is used by the
public in going to and from the Republic of Mexico.

    Your letter further states:

        "All of the revenue from the bridge
    in the form of tolls and also the revenue
    from the buildings in the form of rentals
    go into a bridge fund being administered
    by the Bridge Board of the City of McAllen,
    from which funds the revenue bonds are
    serviced. All money in this fund which
    is not required to service said revenue
    bonds, that is, the profits from the
    operation of the bridge and buildings,
    is then paid into the general fund of
    the city. The buildings involved here
    which are rented and upon which rentals
    are paid to the City of McAllen are rented
    by the following concerns:

        Offices for the Mexican side of bridge owners;
        Offices for the Orange Ball Bus Co.;
        Large Grocery Super Market;
        Te-Re-Ju Store;
        Two Custom Brokers Offices;
        Bridge Cafe;
        U.S. Labor Bracero Center;
        Pe-Mex (Mexican owned Oil Industry)."

In response to a telephone call from this office, you have further stated that all of the above offices and business establishments are located on the Texas side of the bridge, and are within the Hidalgo Independent School District.

Sec. 2, Art. VIII, of the Texas Constitution reads in part as follows:

> ". . . But the legislature may, by general laws, exempt from taxation public property used for public purposes;. . ."

Sec. 9, Art. XI, of the Texas Constitution reads in part as follows:

> "The property of counties, cities and towns, owned and held only for public purposes, such as public buildings and sites therefor, fire engines and the furniture thereof, and all property used, or intended for extinguishing fires, public grounds and all other property devoted exclusively to the use and benefit of the public shall be exempt from forced sale and from taxation, . . . ."

Article 7150, V.C.S., reads in part as follows:

> "The following property shall be exempt from taxation, to-wit:
>
> ". . .
>
> "4. All property, whether real or personal, belonging exclusively to this State, or any political subdivision thereof,. . . ."

Cities are political subdivisions of the State. While Article 7150, V.C.S., purports to exempt all property belonging to any political subdivision of the State, without any restriction, Sec. 2, Art. VIII, Texas Constitution, requires that it be "used for public purposes," and Sec. 9, Art. XI, Texas Constitution, requires that the property of cities be "held only for public purposes" and "devoted exclusively to the use and benefit of the public" in order to be exempt from taxation. In City of Abilene v. State, 113 S.W.2d 631 (Civ. App., 1938, error dism.), the Court held that Article 7150 was inoperative insofar as it attempts to exempt all such property, regardless of use, but is valid to the extent that the exemption includes public property "used for public purposes."

In A. & M. Consolidated Independent School Dist. v. City of Bryan, 143 Tex. 348, 184 S.W.2d 914 (1945), the school district sought to recover ad valorem taxes on rural electrification lines owned by the City of Bryan and extending through the school district. There were 35 miles of lines within the City of Bryan and 280 miles of lines extended through rural territory in three counties, and wholly outside the city. The revenues received from the operation of the lines were used to maintain and operate the same, and to retire the obligation to the Federal agency which constructed the lines. In effect, the City was in the business of selling electrical energy and lights to its own inhabitants, to one other nearby incorporated city, and to citizens who lived in no city at all.

The Supreme Court of Texas stated at page 915:

> "The property in question is owned by the City of Bryan, a municipal corporation, and is therefore public property. Is it used for public purposes? In determining whether or not public property is used for a public purpose the test appears to be whether it is used primarily for the health, comfort, and welfare of the public. . .It is not essential that it be used for governmental purposes. . . .It is sufficient if it be property which all of the public has a right to use under proper regulations. . . . The fact that charges are made or compensation is received for its use does not withdraw it from its public character, provided such charges are incident to its use by the public and the proceeds received for its use inure to the benefit of the political subdivision. . . ." /Emphasis added./

At page 916 the Court said;

> ". . . the particular location of the property within the State has nothing to do with the right to the exemption, nor does the right to the exemption depend on residence of those of the public who enjoy the use thereof. It is the fact that the property is owned by the public and is used for the welfare of the public of some portion of the State that entitles it to exemption." /Emphasis added./

The property is owned by the City of McAllen, a political subdivision of the State. The fact that the property is located outside the City of McAllen and that some members of the public who use the property are not inhabitants of the city does not destroy the exempt status. There is only one question presented: Is the property "used for a public purpose?"

Undoubtedly, the bridge itself meets all the requirements for exemption. With respect to the adjacent buildings, we will quote from Attorney General's Opinion No. 0-7360 (1946), which states in part:

> "The acquisition of the property /for
> a city owned airport/ within Everman
> Independent School District would not
> render the City of Fort Worth responsible
> for any portion of the school district
> indebtedness, save only to the extent
> that the property acquired might be subject
> to taxes if used by the City for other than
> public purposes."

Opinion No. 0-2506 (1940) pertained to an independent school district which had acquired by will a brick business building and several residences being used for rent property. After the school district acquired the buildings, it continued to rent the same, using the rents and revenues received from such property for school purposes only. The State, County and City sought to assess and collect taxes on the property. The opinion stated:

> "It is elementary that the property
> concerned herein and owned by the Wolfe
> City Independent School District is public
> property. The property is not being 'used
> for public purposes,' but on the contrary,
> is being used by private individuals for
> residential and business purposes."

As stated in the Interpretive Commentary which follows Sec. 9 of Article XI, in Vol. 2 of Vernon's Texas Constitution, at page 692:

> "No court has ever developed a logically
> correct and completely adequate definition
> of public purpose, largely because the
> concept is relative in character, depending
> upon the social and economic conditions
> prevailing at the time the courts are called
> upon to define public purpose in a given
> case."

We hold, therefore, that the bridge is exempt from taxation under the Texas Constitution. Some of the buildings are clearly not being used for a public purpose; the grocery supermarket being one obvious example. Due to the peculiar nature of the bridge, same being an <u>international</u> bridge, connecting two countries, the question of whether or not any particular one of the remaining buildings is being used for a public purpose is one of fact, which we are unable to determine. If the use to which any particular building is being put is essential to the operation of this type of bridge at this location, then such building is an integral part of the bridge operation, is being used for a public purpose, and is tax exempt. If it is not essential to the operation of this particular bridge, then it is subject to the tax.

## S U M M A R Y

The international bridge belonging to the City of McAllen, Texas, is public property used for public purposes, and is exempt from ad valorem taxes.

Whether or not the buildings adjacent to the international bridge, purchased by the city with the bridge, are exempt from ad valorem taxes depends on whether or not they are being used for a public purpose in connection with the operation of the bridge, and is a question of fact.

Yours very truly,

WILL WILSON
Attorney General of Texas

By _____
Riley Eugene Fletcher
Assistant

REF:cm

APPROVED:

OPINION COMMITTEE:
W. V. Geppert, Chairman

Henry Braswell
Grady Chandler
Elmer McVey
Malcolm Quick

REVIEWED FOR THE ATTORNEY GENERAL
BY:  Houghton Brownlee, Jr.